IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD HORNE, | : | |
| Plaintiff, | : | 1:14-cv-2004 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| THE DEPARTMENT OF | : | |
| CORRECTIONS, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

### March 8, 2017

Plaintiff Ronald Horne ("Horne"), a Pennsylvania state inmate, incarcerated at the State Correctional Institution at Huntingdon ("SCI-Huntingdon") at all times relevant, commenced this civil rights action on October 16, 2014.  (Doc. 1). Remaining for disposition is Horne's claim that Defendants Richard Goss ("Goss") and J. Ake ("Ake") personally delayed or denied medical treatment for pain in his abdomen and kidneys.  (Doc. 39, pp. 5, 8).

Presently pending is a motion (Doc. 64) for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed on behalf of Defendants Goss and Ake. For the reasons set forth below, the motion for summary judgment will be granted.

## I.   STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine

issue.  FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x 177, 179 (3d Cir. 2008).  The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex.* at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).  "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)).  "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## II.   <u>STATEMENT OF MATERIAL FACTS</u>

Horne arrived at SCI-Huntingdon *via* transfer from SCI-Rockview on or about October 6, 2011.  (Doc. 65, ¶ 1; Doc. 76-1, ¶ 1).  His health problems at

issue in this case began in January 2012.[1]  (*Id.* at 2: *Id.* at 2).  On February 2, 2012,

Physician's Assistant Trimai treated Horne for excessive urination and bilateral

flank pain.  (*Id.* at 4; *Id.* at 4).  He ordered various blood and urine tests.  (*Id.*; *Id.*).

On February 3, 2012, Defendant Ake, a Registered Nurse, noted in Horne's

medical record that Horne failed to appear for the urine dip which had been

scheduled by Trimai.  (*Id.* at 5, 18; *Id.* at 18).  Horne contends that on this date, he

informed Ake that he was in need of medical attention; Ake told him he "was crazy

and if [he] did not shut up he would put [him] in POC."  (Doc. 76-1, ¶ 6; Doc. 76-

2, ¶ 3).

On February 9, 2012, Ake noted that Horne's Psychological Review Team

met to discuss his mental health care and indicated /that it would meet again the

following year.  (*Id.* at 22; *Id.* at 22).  Ake never physically examined Horne during

the relevant time period.  (*Id.* at 19; *Id.* at 19).  Physician's Assistants Trimai and

Riscigno treated Horne for complaints of right flank pain on February 8, February

17, and March 1, 2012.  (Doc. 65, ¶¶ 6, 8, 9).

According to confidential mental health records, on October 24, 2012,

Horne's unit manager became concerned by Horne's abnormal behavior which

included, *inter alia*, urinating and defecating on the cell floor.  (*Id.* at 11; *Id.* at 11).

---

[1] Initially, the Court notes that Horne disputes a number of factual statements supported  by the medical records on the grounds that the medical record entries are "falsely manufactured," or fabricated.  (Doc. 76-1, ¶¶ 3, 5-7, 11, 14, 16).  Other than his own allegations, Horne provides no support for these contentions.  The medical records speak for themselves.

Certified registered nurse practitioner (CRNP) Linda Lane ("Lane") admitted Horne to a psychological observation cell ("POC") on that date.  (Doc. 65, ¶ 11). Lane released him the next day with a directive to follow up in a week.  (Doc. 65, ¶ 12; Doc. 76-1, ¶ 12).

Physician Assistant Chew responded to a sick call request on November 7, 2012, and observed Horne lying on his hands and knees underneath a feces-covered blanket.  (Doc. 65, ¶ 15).  Chew referred Horne for an immediate psychiatric evaluation.  (*Id.*)

Goss, a Licensed Psychology Manager, is only involved in psychological care.  (Doc. 66-11, ¶ 4).  He is not "credentialed" to treat inmate's medical problems.  (*Id.*)  On November 7, 2012, Goss placed Horne in psychological observation status due to Horne's mental decompensation after he continued to be nonverbal, was lying in a fetal position naked, and had defecated and urinated in his cell.  (Doc. 65, ¶¶ 23, 26; Doc. 76-1, ¶¶ 23, 26).  At the time, Horne displayed symptoms of catatonia.  (*Id.* at 26; *Id.* at 26).  Goss  executed an "Application for Involuntary Emergency Examination and Treatment" pursuant to Section 302 of the Mental Health Procedures Act of 1976.  (*Id.* at 27, 29).  Dr. Dolphin, a psychiatrist, examined Horne for the purpose of determining whether an involuntary commitment was indicated and certified that Horne was severely mentally disabled and in need of treatment.  (*Id.* at 28).  The following day,

November 8, 2012, based on Goss's application and Dolphin's certification, Horne

was committed to the State Correctional Institution at Cresson ("SCI-Cresson")

mental health unit on an involuntary commitment.  (*Id.* at 16, 29).

While at SCI-Cresson Horne received a CT scan of his abdomen that

revealed a small bowel obstruction.  (*Id.* at 17).

## III.   <u>DISCUSSION</u>

Section 1983 of Title 42 of the United States Code offers private citizens a

cause of action for violations of federal law by state officials.  *See* 42 U.S.C. §

1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress. . . .

*Id.; see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v.*

*Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a

plaintiff must allege "the violation of a right secured by the Constitution and laws

of the United States, and must show that the alleged deprivation was committed by

a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

For the delay or denial of medical care to rise to a violation of the Eighth

Amendment's prohibition against cruel and unusual punishment, a prisoner must

demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).   Deliberate indifference has been found where a prison official:  "(1) knows  of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197.  Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).  Allegations of negligent treatment or medical malpractice do not trigger constitutional protections.  *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976).

Individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct.  *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195,

1207 (3d Cir. 1998)).  When a plaintiff merely hypothesizes that an individual

defendant may have had knowledge of or personal involvement in the deprivation

of his or her rights individual liability will not follow.  *Atkinson*, 316 F.3d at 271;

*Rode*, 845 F.2d at 1207-08.  Rather, defendants "must have personal involvement

in the alleged wrongs . . . shown through allegations of personal direction or of

actual knowledge and acquiescence."  *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d

Cir. 2003); *Rode*, 845 F.2d at 1207-08.

On February 3, 2012, Ake, a registered nurse, entered information into

Horne's medical record and possibly had a verbal exchange with Horne.  On

February 9, 2012, Ake simply documented the results of a psychological review

team meeting.  Goss's involvement is limited to Horne's mental health treatment

between November 5, 2012 and November 8, 2012, at which time Horne was

transferred to the Mental Health Unit at SCI-Cresson.  Neither defendant examined

or treated Horne for purposes of addressing Horne's abdomen or kidney pain.

Horne fails to establish with any credible evidence that Defendants Ake and Goss

were involved in any delay or denial of medical care related to abdomen or kidney

pain in violation of the Eighth Amendment's prohibition against cruel and unusual

punishment.  Defendants are entitled to an entry of summary judgment.

Further, according to Horne's medical record and the statement of material

facts, *supra*, various physicians and physician's assistants and other medical

personnel treated Horne for these ailments between January 2012 and November 2012.  (Doc. 66-3).  No claim of deliberate indifference is made out where a significant level of care has been provided, as is the case here, and all that is shown is that the prisoner disagrees with the professional judgment of a physician. *Estelle*, 429 U.S. at 105–06, 107 (finding that "in the medical context, . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"); *Parham v. Johnson*, 126 F.3d 454, 458 n. 7 (3d Cir. 1997) (recognizing "well-established law in this and virtually every circuit that actions characterizable as medical malpractice do not rise to the level of 'deliberate indifference' "); *Durmer*, 991 F.2d at 67 (same).  *See also Taylor v. Norris*, 36 F. App'x. 228, 229 (8th Cir. 2002) (finding that deliberate indifference claim failed because it involved a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1024–35 (7th Cir. 1996) (holding that an inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); *Czajka v. Caspari*, 995 F.2d 870, 871 (8th Cir. 1993) (finding inmate's mere disagreement with doctor's informed decision to delay surgery does not establish Eighth Amendment claim).  Courts will not second guess whether a particular course of treatment is adequate or proper.  *See*

*Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting *Inmates of*

*Allegheny Cnty. Jail*, 612 F.2d at 762).  *See also, e.g., Gause v. Diguglielmo*, 339

F. App'x 132, 136 (3d Cir. 2009) (a dispute over the choice of medication does not

rise to the level of an Eighth Amendment violation); *Rush v. Fischer*, No. 09-9918,

2011 WL 6747392, at *3 (S.D.N.Y. 2011) ("The decision to prescribe one form of

pain medication in place of another does not constitute deliberate indifference to a

prisoner's serious medical needs.").

## IV.    CONCLUSION

Based on the above, Defendants' motion (Doc. 64) for summary judgment

will be granted.

A separate order will enter.